**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Monarch Content Management LLC, *et al.*, | No. CV-19-04928-PHX-JJT |
| Plaintiffs, | **ORDER** |
| v. | |
| Arizona Department of Gaming, *et al.*, | |
| Defendants. | |

At issue is the Motion to Intervene filed by Arizona Downs, LLC (Doc. 42, Mot.), to which Plaintiffs Monarch Content Management LLC ("Monarch") and Laurel Racing Association, Inc. ("Laurel Park") filed a Response in opposition (Doc. 53, Resp.), and Arizona Downs filed a Reply (Doc. 55, Reply). The Court will decide the present Motion without oral argument. *See* LRCiv 7.2(f).

## I.    BACKGROUND

On June 7, 2019, the Arizona Legislature passed House Bill ("HB") 2547 and the Governor signed it into law. HB 2547 amends A.R.S. § 5-112 by, among other things, requiring providers of live horse racing simulcasts for the purpose of pari-mutuel wagering, whether originating in Arizona or out of state, to offer the simulcasts at a reasonable price to all live horse racing permittees and off-track betting (OTB) sites in Arizona. HB 2547 vests the Arizona Racing Commission with the exclusive authority to determine the charge that any simulcast provider may levy on live racing permittees and OTB sites in Arizona. The law went into effect on August 27, 2019.

Plaintiffs are out-of-state providers of live horse racing simulcasts; Monarch distributes simulcasts for 13 out-of-state racetracks, including Laurel Park. Monarch has entered into a contract for the provision of simulcasts to Turf Paradise, a live horse racing permittee with OTB sites in Arizona, but does not provide its simulcasts to Arizona Downs, the only other such permittee with OTB sites in Arizona. Monarch alleges that it made a business decision not to distribute its simulcasts to Arizona Downs because such distribution "would create dilution of the wagering product and depress the overall consumption of content." (Doc. 1, Compl. ¶ 43.)

On August 9, 2019, Plaintiffs filed this action against the Arizona Department of Gaming—the Arizona agency charged with regulating gaming—and the Arizona Racing Commission, as well as the individual directors and commissioners of each. Plaintiffs seek a declaration that enforcement of A.R.S. § 5-112, as amended by HB 2547, violates the Contract Clauses of the U.S. and Arizona Constitutions, the Dormant Commerce Clause, and Plaintiffs' free speech rights under the U.S. and Arizona Constitutions; is preempted by the Interstate Horse Racing Act of 1978, 15 U.S.C. §§ 3001 *et seq.*; and is void for vagueness. Plaintiffs seek an Order permanently enjoining enforcement of A.R.S. § 5-112, as amended by HB 2547. On August 13, 2019, Plaintiffs filed a Motion for Temporary Restraining Order ("TRO") with Notice (Doc. 20), which remains pending.

On August 30, 2019, Arizona Downs filed the present Motion to Intervene, which the Court will now resolve.

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 24 provides for two types of intervention: intervention as of right and permissive intervention. The Ninth Circuit outlines four requirements for intervention as of right under Rule 24(a)(2):

> (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

*United States v. Aerojet Gen. Corp.*, 606 F.3d 1142, 1148 (9th Cir. 2010) (quoting *Cal. ex rel. Lockyer v. United States*, 450 F.3d 436, 440 (9th Cir. 2006)). The movant's failure to satisfy any single one of these four factors is fatal to a motion to intervene under Rule 24(a)(2). *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009).

Rule 24(b) governs permissive intervention. An applicant must demonstrate: "'(1) independent grounds for jurisdiction; (2) [that] the motion is timely; and (3) [that] the applicant's claim or defense, and the main action, have a question of law or a question of fact in common.'" *S. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 803 (9th Cir. 2002) (quoting *United States v. City of L.A.*, 288 F.3d 391, 403 (9th Cir. 2002)). Even where those three elements are satisfied, however, the district court retains the discretion to deny permissive intervention. *Id.* (citing *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998)). In exercising its discretion, a court must consider whether intervention will unduly delay or prejudice the original parties and should consider whether the applicant's interests are adequately represented by the existing parties and judicial economy favors intervention. *Venegas v. Skaggs*, 867 F.2d 527, 530–31 (9th Cir. 1998).

## III.     ANALYSIS

### A.     Intervention as of Right

Because it is dispositive to the question of whether Arizona Downs can intervene as of right under Rule 24(a)(2), the Court addresses only whether the existing parties will adequately represent Arizona Downs's interest in this lawsuit. "Where an applicant for intervention and an existing party 'have the same ultimate objective, a presumption of adequacy of representation arises.'" *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 838 (9th Cir. 1996) (quoting *Or. Envtl. Council v. Or. Dep't of Envtl. Quality*, 775 F. Supp. 353, 359 (D. Or. 1991)). In that instance, the moving party bears the burden of demonstrating that the existing parties do not adequately represent its interest through a "compelling showing" to the contrary. *Perry*, 587 F.3d at 952. The Court assesses the moving party's showing by considering three factors:

(1) Whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect.

*Id.* (quoting *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003)).

The goal of both Arizona Downs and Defendants here is the same: a declaration that A.R.S. § 5-112, as amended by HB 2547, is constitutional and enforceable. While Arizona Downs states that it has an economic interest in this lawsuit whereas Defendants' interest lies in public welfare, their goal in this lawsuit is identical and their interests are not "meaningfully distinct" in the context of the lawsuit. *See id.* at 951. Plaintiffs' claims are principally questions of law regarding a state law's constitutionality and whether it is preempted by federal law. As to the *Arakaki* factors identified above, there is no reason for the Court to believe that Defendants will not make all possible arguments in favor of constitutionality and against preemption or that Defendants and their counsel are not fully capable of doing so.

Arizona Downs states that the differences between its and Defendants' interests manifest themselves in two ways. (Mot. at 9.) First, Arizona Downs contends it would push for a shorter case management schedule and speedier resolution of this matter than Defendants might. The Ninth Circuit has stated that "mere differences in [litigation] strategy . . . are not enough to justify intervention as a matter of right." *Perry*, 587 F.3d at 954 (internal quotations omitted). Even if Arizona Downs's proffered reason were sufficient for the Court to find Arizona Downs's interests are not adequately represented by Defendants, the goal of a shorter case management schedule is certainly represented by Plaintiffs, who have expressed a strong desire for a speedy resolution of this matter.

Second, Arizona Downs states it would push for a higher bond amount in the event the Court grants Plaintiffs' TRO request. However, like a shorter case management schedule, this interest by itself does not rise to the level contemplated by Rule 24(a)(2) and, in any event, the Court agrees with Plaintiffs that a bond representing potential money

damages to Arizona Downs would be inappropriate when no damages are at stake in this lawsuit, let alone would Arizona Downs be entitled to them. Because Defendants will more than adequately represent Arizona Downs's interests in the context of Plaintiffs' claims in this lawsuit, Arizona Downs is not entitled to intervention as of right.

### B. Permissive Intervention

Although Arizona Downs's request to intervene meets the three basic elements of permissive intervention under Rule 24(b)—a timely request, grounds for jurisdiction, and a common question of law or fact—considerations of equity and judicial economy counsel against permissive intervention. Importantly, as the Court already noted, Arizona Downs's interests are more than adequately represented by Defendants in this lawsuit. The Court cannot discern a benefit from having two separate parties brief identical issues with identical goals, when the first party is fully capable of doing so. *Perry*, 587 F.3d at 955 (citing *United States ex rel. Richards v. De Leon Guerrero*, 4 F.3d 749, 756 (9th Cir. 1993) and noting that court denied "permissive intervention in a subpoena enforcement proceeding seeking disclosure of Northern Mariana Island tax records where the government party to the case made the same arguments as the taxpayer intervenors, and the government party would adequately represent the intervenors' privacy interests").

On the other hand, there is a cost to Arizona Downs's intervention in the form of delay. Plaintiffs may have somewhat overstated the extra work and delay that would result—and to some degree, already has—upon Arizona Downs's intervention in this case. But delay and decreased efficiency are certain to occur when adding an additional party to these proceedings, even if that party is seeking the same relief as an existing party. For example, as the *Perry* court noted, permitting intervention is likely to cause delay because "each group would need to conduct discovery of substantially similar issues." *Id.* This kind of redundancy is unnecessary because the Court anticipates that Defendants will fully "develop[] a complete factual record encompassing [their] interests," and, again, Arizona Downs's interests are aligned with Defendants' interests. *Id.* As the *Perry* court decided, permitting intervention does not have identifiable benefits and is thus not worth the cost in

terms of added burden, inefficiency, and delay. Therefore, the Court in its discretion will deny Arizona Downs's request for permission to intervene under Rule 24(b).

IT IS THEREFORE ORDERED denying the Motion to Intervene filed by Arizona Downs, LLC (Doc. 42).

IT IS FURTHER ORDERED setting oral argument on Plaintiffs' Motion for Temporary Restraining Order (Doc. 20) on **October 30, 2019, at 1:30 p.m.,** before District Judge John J. Tuchi in Courtroom 505, Sandra Day O'Connor Federal Courthouse, 401 West Washington Street, Phoenix, Arizona 85003. The Court will hear only legal argument on Plaintiffs' Motion; no new evidence need be presented.

Dated this 4th day of October, 2019.

Honorable John J. Tuchi
United States District Judge